IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MILLER HENLEY, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:14-CV-1764-M-BK |
| | § | |
| JPMORGAN CHASE BANK N.A., | § | |
|     Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3*, this case has been referred to the undersigned for pretrial management. Before the Court is Defendant JPMorgan Chase Bank, N.A.'s *Motion to Dismiss*, Doc. 5. For the reasons the follow, it is recommended that Defendant's motion be **GRANTED**.

**I.  BACKGROUND[1]**

This case stems from the attempted foreclosure of real property located at 5320 Reiger Avenue, Dallas, Texas 75214 (the "Property"). Plaintiff executed a deed of trust ("Deed of Trust") on February 28, 2006, in favor of JLM Direct Funding LLC, to purchase the Property. Doc. 5-3 at 16. Prior to the events giving rise to this case, Plaintiff defaulted on his mortgage loan, and subsequently sued Defendant in state court in October 2011 for, *inter alia*, injunctive relief preventing the foreclosure sale of the Property. *Henley v. JPMorgan Chase Bank, N.A (Henley I)*, No. 11-CV-2716, Dkt. 16 at 1 (N.D. Tex. 2013) (Solis, J.). That case was removed to this Court on October 13, 2011, where some claims were dismissed on September 27, 2012, Dkt. 10, and summary judgment was granted in favor of Defendant as to the remaining claims on May 30, 2013, paving the way for a foreclosure sale. Dkt. 10; Dkt. 16; Dkt. 17.

---

[1] In ruling on a motion to dismiss, a court must accept all factual allegations in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). Accordingly, the Court recounts the facts as alleged in *Plaintiff's Original Petition*. Doc. 1-1 at 6-13.

According to the complaint in this subsequent suit, while *Henley I* was pending, a massive fire occurred at the Property in November 2012. Doc. 1-1 at 7. The fire insurance policy covering the Property had been purchased by Defendant from Standard Guaranty ("Standard"). Doc. 1-1 at 11; Doc. 8 at 3. Standard took three months to assess the damage and issue a partial payment check for damages, payable to both Plaintiff and Defendant. Doc. 1-1 at 11. Standard held approximately $30,000 as recoverable depreciation, obtainable only within a six-month window. Doc. 1-1 at 11. Defendant agreed to disburse the partial funds in draws as progress was completed. Doc. 1-1 at 11. However, Plaintiff asserts that the disbursement of funds in draws caused serious delay in the restoration process, resulting in Plaintiff missing the deadline for receipt of the $30,000 recoverable depreciation withheld by Standard and falling behind on his mortgage payments. Doc. 1-1 at 11-12. Plaintiff also avers that Defendant made the required inspection process cumbersome by: (1) requesting ten days' notice but showing up after only two days, (2) not contacting Plaintiff prior to inspection, and (3) not notifying Plaintiff that inspection had taken place. Doc. 1-1 at 12. Instead, Plaintiff states, he learned two weeks later that an inspection had already occurred when he called to inquire as to why he had not heard from Defendant's inspector. Doc. 1-1 at 12.

Defendant scheduled a foreclosure sale for May 6, 2014. *See* Doc. 1-1 at 12. Plaintiff initiated this suit in state court to stop the impending foreclosure, and Defendant timely removed the case to this Court. Doc. 1.

Plaintiff asserts claims for fraud (misrepresentation), breach of contract, and breach of fiduciary duty. Doc. 1-1 at 7–8. Plaintiff also requests injunctive relief. Doc. 1-1 at 13. Specifically, Plaintiff avers that Defendant assured him it would give him the time and cooperation necessary to rebuild the Property after the fire, while it knew or should have known

that it had no intention of fulfilling that promise. Doc. 1-1 at 7. Plaintiff alleges that he relied on this misrepresentation to his detriment. Doc. 1-1 at 7. Plaintiff also avers that Defendant was contractually obligated, and owed a fiduciary duty, to faithfully pay the draws for reconstruction in a reasonable amount of time, and it failed to do. Doc. 1-1 at 7. Plaintiff alleges that his damages include lost rent[2] and the $30,000 lost depreciation payment he was unable to obtain from the insurer. Doc. 1-1 at 7–8. Defendant has moved to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). Doc. 5.

## II. APPLICABLE LAW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege enough facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To overcome a Rule 12(b)(6) motion, a plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). Moreover, the complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). While a court must accept all of the plaintiff's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. When considering a Rule 12(b)(6) motion, a court may consider documents outside the complaint when they are: (1) attached to the motion to

---

[2] The Property was used by Plaintiff as investment property.

3

dismiss; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).[3]

### III.  DISCUSSION

Defendant presents two grounds for dismissal of Plaintiff's complaint: (1) Plaintiff's claims are barred by *res judicata* because they could have been brought in the course of *Henley I*; and (2) Plaintiff fails to state claim upon which relief can be granted. Doc. 5.

**A.  *Res Judicata***

Defendant argues that Plaintiff's claims are barred by *res judicata* because *Henley I* was a final judgment on the merits, the parties are identical to the parties in the current action, and this case is based on claims that could have been raised in the earlier case. Doc. 5 at 3-5. Plaintiff responds that his claims are not barred by *res judicata* because he could not have asserted claims relating to the fire in *Henley I*. Doc. 8 at 1–2. Plaintiff contends that it was not until July 2013, well after *Henley I* was brought, that the damages from Defendant's delayed release of funds occurred and, consequently, he could not have amended *Henley I* to include such claims and damages. Doc. 8 at 2-3.

The rule of *res judicata*, or claim preclusion, "bars litigation of claims that either have been litigated or could have been raised in an earlier suit." *Test Masters Educational Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). "The test for res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and

---

[3] Here, the Deed of Trust is included in the appendix to the motion to dismiss and is central to Plaintiff's claims. Doc. 5-3. Moreover, the document reflects its recordation in the Dallas County records. Doc. 5-3 at 27–28. Thus, the Court takes judicial notice of it. FED. R. EVID. 201(b)(2) (a court may take judicial notice of a fact when "it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

(4) the same claim or cause of action was involved in both actions." *Id.* To determine whether both suits involve the same cause of action, the Court of Appeals for the Fifth Circuit employs a transactional test -- a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction out of which the original action arose. *Petro-Hunt LLC v. United States*, 365 F.3d 395-96 (5th Cir. 2004). Thus, *res judicata* precludes "litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Southmark Props. v. Charles House Corp.*, 747 F.2d 862, 872 (5th Cir. 1984).

In *Henley I*, the parties were identical and the judgment in *Henley I* was a final judgment on the merits by this Court, undoubtedly a court of competent jurisdiction. No. 11-CV-2716, Dkt. 16; Dkt. 17. As to the fourth prong, the Court must give preclusive effect to claims that could have been litigated in *Henley I*. Consequently, to the extent Plaintiff again seeks to forestall foreclosure, his claim is indeed precluded.[4]

However, Plaintiff also seeks monetary damages, and the Court concludes those claims are not precluded. As Plaintiff notes, the claims in this case stem from a dispute over the process of disbursing insurance proceeds obtained after *Henley I* was filed. Specifically, Plaintiff alleges that while the fire occurred in November 2012, he did not receive any draws until March 2013, and the six-month window to collect the recoverable depreciation closed in July 2013. Doc. 1-1 at 11; Doc. 8 at 2. Thus, Plaintiff contends his claims regarding the insurance proceeds did not accrue until after a final judgment had been rendered in *Henley I* in May 2013. No. 11-CV-2716, Doc. 17 (entering judgment on May 30, 2013). Although both suits were filed in anticipation of

---

[4] Although Plaintiff allegedly made repairs to the property after the Court's previous judgment, nothing in the record indicates that Plaintiff did not continue to be in breach of the Note or that Defendant did not continue to have the authority under the judgment in *Henley I* to proceed to a foreclosure sale.

5

impending foreclosure, the specific claims in the instant suit stem from events involving fire insurance proceeds that occurred after this Court's previous judgment. Accordingly, Defendant's motion to dismiss Plaintiff's claims for damages on *res judicata* grounds fails.

**B. Breach of Contract**

Plaintiff alleges the following as his "Breach of Contract" cause of action:

> Defendant owed a contractual obligation to Plaintiff to faithfully pay the draws for reconstruction in a reasonable amount of time. Defendant woefully failed to pay the draws in a reasonable amount of time. Plaintiff has suffered damages of lost rent and of the approximately $30,000.00 recoverable depreciation hold back.

Doc. 1-1 at 7-8. Defendant contends in its motion to dismiss that Plaintiff's breach of contract fails because the Deed of Trust, the only contract between the parties, allows Defendant to disburse insurance proceeds in a single payment or series of payments, or to keep insurance proceeds and apply them to the debt owed. Doc. 5 at 7. In response, Plaintiff argues that Defendant constructively breached the Deed of Trust by causing lengthy and unreasonable delays in the release of funds, which made Plaintiff's required performance impossible. Doc. 8 at 4.

Under Texas law, to plead a claim for breach of contract, a plaintiff must allege: (1) the existence of a valid contract; (2) that he performed or tendered performance under the contract; (3) that the defendant breached the contract; and (4) that the plaintiff sustained damages as a result of the breach. *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003). The Court liberally construes the *pro se* Plaintiff's allegation of "constructive breach" as a claim of impossibility of performance -- a "general principle that if one party to a contract wrongfully prevents the other party from performance, or makes it impossible for him to perform his obligations under the contract, the offending party will not be permitted to recover . . . for non-performance and thereby take advantage of his own wrongful acts." *Owens v. William H.*

6

*Banks Warehouses Inc*., 202 F.2d 689, 692 (5th Cir. 1953); *accord United States v. Winstar Corp*., 518 U.S. 839, 920 (1996) (Scalia, J., concurring). "But this principle has no application when the party whose performance was prevented entered into the contract fully aware of the obstacles which would prevent his performance." *Nitram, Inc. v. Cretan Life*, 599 F.2d 1359, 1371 (5th Cir. 1979).

      Here, the Deed of Trust provides:

> [A]ny insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.

Doc. 5-3 at 6-7, ¶ 5.

      The Deed of Trust echoes this provision in a later clause: "Borrower shall be responsible for repairing or restoring the Property only if Lender has released [insurance] proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed." Doc. 5-3 at 7, ¶ 7. Plaintiff concedes as much. Doc. 8 at 4. Thus, Plaintiff was on notice from the outset that he was obligated to undertake repairs of the Property even if Defendant released insurance proceeds in a series of progress payments as work was completed. Doc. 5-3 at 6-7, ¶¶ 5, 7. And while Plaintiff suggests that Defendant failed to adhere to its own instructions regarding the inspection process, Doc. 1-1 at 11-12, he points to nothing in said instructions that provides a specific timetable for the actual payout of the draws. Indeed, he offers no facts in support of his claims that Defendant's actions fell outside the provisions of the Deed of Trust -- the contract in question.

Consequently, since Plaintiff "entered into the contract fully aware of the obstacles [that] would prevent his performance," *Nitram*, 599 F.2d at 1371, he cannot avail himself of the impossibility doctrine and his breach of contract claim should be dismissed.

## C. Breach of Fiduciary Duty

Plaintiff further alleges in his complaint that "[a]cting as Plaintiff's agent and as the bailee of funds from the fire insurance, Defendant failed to uphold its fiduciary duty." Doc. 1-1 at 7-8.

In its motion to dismiss, Defendant argues that Plaintiff fails to plead any facts showing that the requisite extraordinary circumstances exist from which to infer a fiduciary relationship between borrower and lender. Doc. 5 at -9. Plaintiff responds that Defendant's breach of fiduciary duty lies in its acting as a *de facto* insurance agent for Plaintiff because Defendant (1) purchased the insurance policy at an inflated rate, and (2) received a commission for purchasing the policy from Standard. Doc. 8 at 4-5.

In Texas, lenders and their agents ordinarily have no fiduciary duty to borrowers. *In re Absolute Resource Corp.*, 76 F. Supp. 2d 723, 734 (N.D. Tex. 1999) (Maloney, J.). To prove the existence of a fiduciary relationship in this context, the plaintiff must show "extraordinary circumstances such as excessive control and influence by the lender on the borrower's business activities." *Id.* (citing *Greater Sw. Office Park Ltd. v. Tex. Commerce Bank, N.A.*, 786 S.W.2d 386, 391 (Tex. App.—Houston [1st Dist.] 1990), *superseded by statute on other grounds*, TEX. PROP. CODE § 51.003. Plaintiff has not alleged any facts from which the Court can infer extraordinary circumstances. In his response, Plaintiff only addresses the relationship between Defendant and Standard, Doc. 8 at 4, and fails to allege any facts establishing a fiduciary

8

relationship himself and Defendant.  Consequently, Plaintiff has failed to state a claim for breach of fiduciary duty.

### D.  Fraud (Misrepresentation)

Under the cause of action titled "Fraud," Plaintiff alleges:

> Defendant assured Plaintiff that it would give Plaintiff the time and cooperation necessary to allow for the rebuilding of the property.  At the time of the assurances, Defendant knew or should have known it had no intent of fulfilling the promise.  Plaintiff relied on Defendant's assurances to Plaintiff's detriment.

Doc. 1-1 at 7.

Defendant contends that Plaintiff has failed to plead with specificity the content, context, or materiality of any alleged misrepresentations.  Doc. 5 at 6.  Defendant further notes that Plaintiff has failed to identify who made the alleged misrepresentations, state any reliance upon such misrepresentations, or how he was damaged by such reliance.  Doc. 5 at 6–7.  Plaintiff responds that Defendant's counsel told Plaintiff that Defendant had decided to authorize insurance claim funds to be released for repairs in early March 2013 and that Defendant knew (or should have known due to its relationship with Standard) the urgency of completing restoration within six months to collect the recoverable depreciation.  Doc. 8 at 3.  Plaintiff maintains that Defendant's knowledge that it would delay the release of the insurance funds, coupled with its inducement of Plaintiff to commence repairs on the mistaken belief the draws and depreciation retention ultimately be paid constitutes a material misrepresentation.  Doc. 8 at 3.  Plaintiff argues that his reliance on such misrepresentation is evident in his hiring contractors and performing repairs on the Property himself.  Doc. 8 at 3–4.

Under Texas law, the elements of fraudulent misrepresentation are: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a

positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). Additionally, under Federal Rule of Civil Procedure 9(b), a plaintiff must "state with particularity the circumstances constituting fraud or mistake." In the Fifth Circuit, pleading fraud with particularity requires "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (internal quotation marks omitted). In other words, Rule 9(b) requires "the who, what, when, where, and how" to be laid out. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on denial of reh'g*, 355 F.3d 356.

      Defendant correctly asserts that Plaintiff's allegations simply fail to meet the Rule 9(b) standard. In his petition, Plaintiff has made a general, conclusory allegation of fraud relating to Defendant's assurance that "it would give Plaintiff the time and cooperation necessary to allow for the rebuilding of the property." Doc. 1-1 at 7. As a claim of fraud, this allegation is not sufficiently supported with relevant facts and unable to be proven false because it contains subjective elements such as "time and cooperation necessary." Doc. 1-1 at 7. Moreover, Plaintiff's suggestion in his response that Defendant's counsel knew that the release of the insurance funds would be unreasonably delayed when she informed Plaintiff of Defendant's decision to release the insurance funds to him for repairs is also conclusory. *See Twombly*, 550 U.S. at 555 (the Court is not bound to accept as true "a legal conclusion couched as a factual allegation"). Plaintiff has offered no facts, which if true, would establish Defendant's counsel knew her statement regarding Defendant's decision to release insurance funds to Plaintiff for

repairs on the property was false or was made recklessly without any knowledge of the truth, as is his burden.  *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).

**E.  Injunctive Relief**

Plaintiff seeks to enjoin the foreclosure of the Property.  Doc. 1-1 at 13.  As stated *supra*, this issue has been previously litigated, and Plaintiff has not stated facts to establish that Defendant is not entitled to proceed to foreclosure basis on the Court's earlier judgment.  Thus, Plaintiff's attempt to enjoin the pending foreclosure sale is precluded under the doctrine of *res judicata*.  Alternatively, Defendant correctly argues that a grant of injunctive relief hinges on a party's substantial likelihood of success on the merits underlying their claims. Doc. 5 at 9; *see DSC Communications Corp. v. DGI Technologies, Inc.*, 81 F.3d 597, 600 (5th Cir. 1996).  Because Plaintiff's substantive claims lack merit, as previously detailed herein, his request for injunctive relief also fails.

## IV.  LEAVE TO AMEND

A court may dismiss a claim that fails to meet the pleading requirements, but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after repeated opportunities to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000).  Plaintiff is proceeding without the assistance of counsel and has not previously been granted leave to amend his claims.  Thus, if this recommendation is accepted, Plaintiff should be given the opportunity to amend his complaint to cure, if he can, the deficiencies noted.  See *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) (dismissing an action after giving the plaintiff only one opportunity to state his case is ordinarily unjustified).

## V.  CONCLUSION

Accordingly, it is recommended that Defendant's *Motion to Dismiss*, Doc. 5, be **GRANTED** and Plaintiff's claims should be **DISMISSED WITHOUT PREJUDICE**.  If, within 21 days of the District Judge's Order accepting this recommendation, Plaintiff fails to amend his complaint to cure the deficiencies noted herein, at the re-urging of Defendant all claims should be **DISMISSED WITH PREJUDICE** and this case closed.

**SO RECOMMENDED** on February 2, 2015.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE