IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MILLER HENLEY, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:14-CV-1764-M-BK |
| | § | |
| JPMORGAN CHASE BANK N.A., | § | |
|     Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3*, this case has been referred to the undersigned for pretrial management. Before the Court is Defendant JPMorgan Chase Bank, N.A.'s *Motion to Dismiss Amended Complaint*, Doc. 14. For the reasons that follow, it is recommended that Defendant's motion be **GRANTED**.

**I.  BACKGROUND**

This case stems from the attempted foreclosure sale of real property located at 5320 Reiger Avenue, Dallas, Texas 75214 (the "Property"). Plaintiff executed a deed of trust ("Deed of Trust") on February 28, 2006, in favor of JLM Direct Funding LLC, to purchase the Property. Doc. 14-3 at 16. Prior to the events giving rise to this case, Plaintiff defaulted on his mortgage loan, and subsequently sued Defendant in state court in October 2011 for, *inter alia*, injunctive relief preventing the foreclosure sale of the Property. *Henley v. JPMorgan Chase Bank, N.A (Henley I)*, No. 11-CV-2716, Dkt. 16 at 1 (N.D. Tex. 2013) (Solis, J.). That case was removed to this Court on October 13, 2011, where some claims were dismissed on September 27, 2012, and summary judgment was granted in favor of Defendant as to the remaining claims on May 30, 2013, paving the way for a foreclosure sale. Dkt. 10; Dkt. 16; Dkt. 17.

According to the complaint, in November 2012, while *Henley I* was pending, a massive fire occurred at the Property. Doc. 10 at 2. The insurance policy covering the Property, which had a $240,000 limit, had been purchased by Defendant. Doc. 13 at 1-2. The original insurance estimate was for $214,000 worth of damage and stated that there would likely be additional damages over and above the claim that would become apparent once demolition began. Doc. 13 at 2. The insurance carrier issued a partial payment but withheld approximately $30,000 as recoverable depreciation, obtainable only within a six-month window. Doc. 13 at 2. Defendant agreed to disburse the partial funds in draws as progress was completed, calling for "50% of the work to be completed after only 1/3 of funds were released, and . . . another 1/3 disbursement at the completion of 50% of completion of work, and 90% of work to be completed before releasing the final 1/3." Doc. 13 at 2-3.[1] Additional work required on the Property exceeded the roughly $25,000 remaining under the policy limit. Doc. 13 at 2.

Plaintiff asserts that the disbursement of funds in draws caused a serious delay in the restoration process, resulting in Plaintiff losing the opportunity to obtain (1) the $30,000 withheld as recoverable depreciation, (2) the remaining $25,000 available under the policy limit, and (3) rental income for the Property's four units. Doc. 13 at 3-4. Plaintiff also avers that Defendant made the required inspection process cumbersome by: (1) requesting ten days' notice of the partial completion of repairs but showing up to inspect after only two days, (2) not contacting Plaintiff prior to inspection, and (3) not notifying Plaintiff that inspection had taken place. Doc. 13 at 4. Plaintiff states that, instead, he learned of the inspection two weeks after it occurred. Doc. 13 at 4.

---

[1] As best the Court can decipher, between Plaintiff's response to Defendant's first motion to dismiss and the amended complaint, the terms of Defendant's disbursements were one-third upfront, another third upon 50% completion, and the final third upon 90% completion. Doc. 8 at 4; Doc. 13 at 3.

After Plaintiff failed to make mortgage payments, Defendant gave notice of a May 6, 2014 foreclosure sale. *See* Doc. 10 at 2 (citing Doc. 1-1 at 12). Plaintiff initiated this suit in state court to stop the impending foreclosure, and Defendant timely removed the case to this Court. Doc. 1.

In his amended complaint, Plaintiff preemptively discusses the inapplicability of *res judicata* and reasserts claims for breach of contract and breach of fiduciary duty. Doc. 13 at 4-5. Plaintiff also requests injunctive relief. Doc. 13 at 6. Specifically, Plaintiff alleges that Defendant failed to follow its own inspection procedures, which were in writing and constituted a contract. Doc. 13 at 4-5. Plaintiff also avers that Defendant had a fiduciary duty to faithfully pay the draws for reconstruction in a timely manner, and it failed to do. Doc. 13 at 5. Plaintiff alleges that his damages include lost rent,[2] the $30,000 depreciation payment he was unable to obtain from the insurer, and the difference between the claim amount and the policy limit, which he had also hoped to get. Doc. 13 at 2-3. Defendant has moved to dismiss the amended complaint for failure to state a claim. Doc. 14.

## II.  APPLICABLE LAW

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must allege enough facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To overcome a Rule 12(b)(6) motion, a plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). Moreover, the complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity.

---

[2] The Property was used by Plaintiff as investment property.

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). While a court must accept all of the plaintiff's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. When considering a Rule 12(b)(6) motion, a court may consider documents outside the complaint when they are: (1) attached to the motion to dismiss; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).[3]

### III.  DISCUSSION

As an initial matter, Defendant again asserts in the motion *sub judice* that <u>all</u> of Plaintiff's claims are barred by *res judicata* because Judge Solis previously ordered that there was no impediment to foreclosure sale. Doc. 14 at 3-6. Because, in disposing of Defendant's previous motion to dismiss, the Court has already addressed at length the inapplicability of the doctrine of *res judicata* to Plaintiff's claims other than his current request to enjoin the foreclosure sale, the Court declines to again address that argument. *See* Doc. 10 at 4-6; Doc. 12 (*Order Accepting the Findings, Conclusions, and Recommendation of the United States Magistrate Judge*).

### A.  Breach of Contract

In his amended complaint, Plaintiff alleges the following as his "Breach of Contract" cause of action:

> Defendant specifically breached contract with respect to disbursement of funds by failing to follow inspection procedures unilaterally created by Defendant. . . . This delay as a result of Defendant's failure to follow the guidelines, created by the

---

[3] The Deed of Trust is included in the appendix to the motion to dismiss and is central to Plaintiff's claims. Doc. 5-3. Moreover, the document reflects its recordation in the Dallas County records. Doc. 5-3 at 27–28. Thus, the Court takes judicial notice of it. FED. R. EVID. 201(b)(2) (a court may take judicial notice of a fact when "it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

> Defendant, created another month's delay, completely as a result of Defendant's breach, which further strained the six month time-frame allowed by the insurance carrier to complete repairs and to receive the roughly $55,000 for supplemental damages and recoverable depreciation that was available if work was completed in time-frame that policy called for.

Doc. 13 at 4. Defendant contends in its motion to dismiss that Plaintiff's breach of contract fails because the Deed of Trust permits Defendant to disburse insurance proceeds in a single payment or series of payments, or to simply keep insurance proceeds and apply them to the debt owed. Doc. 14 at 7. Plaintiff responds that Defendant's offer to release the funds in equal draws as progress was made, and Plaintiff's acceptance of those conditions, resulted in a contract ("the purported contract"). Doc. 16 at 3. Plaintiff argues that he performed his obligations under the purported contract by undertaking all repairs for the Property. Doc. 16 at 3. Plaintiff posits that Defendant breached the purported contract, which inherently included "expectations of reasonable and timely performance," by repeatedly delaying for several weeks the release of draws. Plaintiff contends that this breach resulted in a domino effect of other complications, such as problems with the city inspectors. Doc. 16 at 4. Defendant does not substantively reply to Plaintiff's argument regarding the existence and validity of the purported contract, and Plaintiff's response is silent as to Defendant's contention that the sole contract governing the insurance disbursement is the Deed of Trust.

In order to establish breach of contract, Plaintiff much show the: (1) the existence of a valid contract; (2) performance by Plaintiff; (3) breach by the defendant; and (4) damages resulting from the breach. *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003). Plaintiff's fails to state a viable claim because, even taking his allegations as true, the purported contract was not a valid contract.

Here, it is clear that the Deed of Trust governed the relationship between the parties. As noted the previous *Findings, Conclusions and Recommendation*, Doc. 10 at 7, the Deed of Trust provides that:

> [A]ny insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.

Doc. 5-3 at 6-7, ¶ 5. The Deed of Trust echoes this provision in a later clause: "Borrower shall be responsible for repairing or restoring the Property only if Lender has released [insurance] proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed." Doc. 5-3 at 7, ¶ 7.

Plaintiff has not alleged facts from which it can be inferred that the purported contract amended the terms of the Deed of Trust. First, Plaintiff repeatedly refers to the terms of the purported contract as "written instructions" and "guidelines," revealing that there was no meeting of the minds, much less an amendment of the terms of the Deed of Trust. *See Domingo v. Mitchell*, 257 S.W.3d 34, 39-40 (Tex. App.—Amarillo 2008) (requiring offer and acceptance with a meeting of the minds). Second, there was no consideration to support a modification to the Deed of Trust because, under the purported contract, Plaintiff was merely obligated to undertake repairs -- just as under the Deed of Trust. *See FCLT Loans, L.P. v. United Commerce Ctr. Inc.*, 76 S.W.3d 58, 60 (Tex. App.—Eastland 2002) ("[M]odification of an existing contract must be based upon sufficient new consideration."). Third, because the Deed of Trust does not provide a specific timetable for the actual payout of the draws, Plaintiff fails to assert a factual

basis for his claim that Defendant's actions in not timely paying them fell outside the provisions of the parties' contract. In other words, there is no breach. Accordingly, Plaintiff's claim for breach of contract should be dismissed.

### B. Breach of Fiduciary Duty

Plaintiff alleges in his amended complaint that "Defendant received commissions from [the insurance] carrier for selling an overpriced insurance policy [which] created an undue influence and control, by depriving Plaintiff of a reasonably priced policy with more favorable terms." Doc. 13 at 5. Plaintiff also avers that Defendant should have been aware of the insurance policy's terms, and that Defendant "as a fiduciary had a responsibility to release funds in a timely manner." Doc. 13 at 5. Defendant argues that Plaintiff does not allege any facts from which a fiduciary relationship could be inferred. Doc. 14 at 9. Defendant insists that it was Plaintiff's obligation to both insure and repair the Property and Defendant cannot be a fiduciary just because it protected its interests against Plaintiff's failure to do so. Doc. 14 at 9. Plaintiff responds that the creation of the fiduciary relationship lies in the extraordinary and unlawful act of "receiving commissions for the purchase/sale of the [insurance] policies." Doc. 16 at 6.

In Texas, lenders and their agents ordinarily have no fiduciary duty to borrowers. *In re Absolute Resource Corp.*, 76 F. Supp. 2d 723, 734 (N.D. Tex. 1999) (Maloney, J.). To prove the existence of a fiduciary relationship in this context, the plaintiff must show "extraordinary circumstances such as excessive control and influence by the lender on the borrower's business activities." *Id.* (citing *Greater Sw. Office Park Ltd. v. Tex. Commerce Bank, N.A.*, 786 S.W.2d 386, 391 (Tex. App.—Houston [1st Dist.] 1990), *superseded by statute on other grounds*, TEX. PROP. CODE § 51.003. Plaintiff has again failed to allege any facts from which the Court can infer extraordinary circumstances. In his response, Plaintiff only addresses the relationship

7

between Defendant and the insurance carrier, Doc. 16 at 6, and fails to allege any facts establishing a fiduciary relationship between himself and Defendant.  Consequently, Plaintiff has failed to state a claim for breach of fiduciary duty, and Defendant's motion to dismiss this claim should, therefore, be granted.

### C.  Injunctive Relief

Plaintiff seeks to enjoin the foreclosure sale of the Property.  Doc. 1-1 at 13.  As stated *supra*, this issue has been previously litigated, and Plaintiff has not stated facts to establish that Defendant was not entitled to proceed to foreclosure based on the Court's earlier judgment.  Thus, Plaintiff's attempt to enjoin the pending foreclosure sale is precluded under the doctrine of *res judicata*.  Alternatively, Defendant correctly argues that a grant of injunctive relief hinges on a party's substantial likelihood of success on the merits underlying their claims. Doc. 14 at 10; *see DSC Communications Corp. v. DGI Technologies, Inc.*, 81 F.3d 597, 600 (5th Cir. 1996).  Because Plaintiff's substantive claims lack merit, as previously detailed herein, his request for injunctive relief also fails.

### IV.  LEAVE TO AMEND

The Court, after identifying deficiencies in the Original Petition, granted Plaintiff leave to amend his complaint, which resulted in the amended complaint now before the Court.  Despite the opportunity to amend, Plaintiff has again failed to state cognizable claims, and in large part has advanced the same deficient arguments as before.  Thus, the Court concludes that Plaintiff has already pled his best case and that granting additional leave to amend would be futile and cause needless delay.  See *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) ("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit.").

## V.  CONCLUSION

Accordingly, Defendant's *Motion to Dismiss Amended Complaint*, Doc. 14, should be **GRANTED**, and Plaintiff's claims **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on August 10, 2015.

*[signature]*
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE